## United States District Court
## District of Massachusetts

| | |
|---|---|
| AIG Specialty Insurance Company,<br><br>        Plaintiff,<br><br>        v.<br><br>Jude McColgan, et al.,<br><br>        Defendants. | Civil Action No.<br>21-11112-NMG |

### MEMORANDUM & ORDER

GORTON, J.

This case arises from claims that Jude McColgan ("McColgan") and Rajeev Aggarwal ("Aggarwal") (collectively, with McColgan, "defendants") fraudulently induced Upland Software, Inc. ("Upland") to purchase Char Software, Inc. ("Char"). Both McColgan, who was the Chief Executive Officer ("CEO") of Char at the time of the transaction, and Aggarwal, a founder, former director, advisor and stockholder of Char, are alleged to have financially benefited from doing so. AIG Specialty Insurance Company ("AIG" or "plaintiff"), as subrogee and assignee of Upland, now seeks to recover the amount Upland allegedly overpaid due to the fraud. Pending before the Court are two motions to dismiss, one from each defendant.

- 1 -

I.  **Background**

In February, 2020, McColgan, as Char CEO, finalized and
executed an Agreement and Plan of Merger ("Acquisition
Agreement") with Upland.  As part of that Acquisition Agreement,
Char provided Upland with a Material Customer list and
certified, <u>inter</u> <u>alia</u>:

> to the Knowledge of the Company, no party to any
> Material Contract intends to, terminate, cancel or
> materially change the terms of, any such Material
> Contract. The Company (i) has not received any notice,
> and has no reasonable basis to believe, that any
> Material Customer shall not continue as a customer of
> the Company after the Closing or that such customer
> intends to terminate or materially modify existing
> Contracts with the Company or to reduce its
> commitments or purchases thereunder....

As set forth in the Acquisition Agreement,

> 'Knowledge' means, when used with respect to the
> Company, the actual knowledge of Jude McColgan...or
> the knowledge [he] would have, after due inquiry with
> respect to the subject matter so qualified with
> Knowledge.

According to the facts alleged in the complaint, however,
McColgan and Aggarwal knew that one of Char's most lucrative
customers, ESPN, Inc. ("ESPN"), which was included on the
Material Customer list, did not intent to renew its contract
with Char.

In December, 2019, Aggarwal had one or more calls with ESPN
representatives, including ESPN Senior Product Director Andrew
Machado ("Machado").  During those calls, Aggarwal attempted to

- 2 -

expand the relationship between the two business but was
rebuffed.  In fact, as set forth in the complaint, ESPN
representatives instead conveyed that ESPN was considering
alternatives to Char due to cost.  Subsequently, on January 21,
2020, Machado sent an email to Char's Director of Account
Management ("the Director") that ESPN was not going to renew its
contract with Char.  That same day, the Director notified
McColgan via email that ESPN was "a churn risk for this year"
and explained that Aggarwal has "alluded" to ESPN considering
other partners.

The Director subsequently spoke with Machado to better
understand ESPN's decision not to renew its contract with Char.
After that conversation, on January 27, 2020, the Director
emailed McColgan and others stating that ESPN was "not planning
on continuing with [Char] post contract expiration".  McColgan
responded, "I continue to hear the opposite."  As set forth in
the complaint, McColgan's assertion was intentionally false as
McColgan had no basis to believe that ESPN would renew its
contract with Char.

Just one day after that email, representatives from Upland
spoke with an ESPN representative other than Machado as part of
Upland's due diligence process pursuant to the acquisition.
During that call, the ESPN representative indicated uncertainty

about ESPN's continued relationship with Char.  Upland later
requested an additional phone call with ESPN to obtain more
information about the relationship.

Simultaneously, on January 28, 2020, McColgan and Aggarwal
each individually contacted Machado at his personal email
account about "providing a reference".  Aggarwal had previously
communicated with Machado only through his ESPN email account.
McColgan and Aggarwal both spoke with Machado via phone over the
course of the day.

A few days later, on January 30, 2020, Machado spoke with
Upland representatives about the relationship between ESPN and
Char.  On that call, Machado stated that ESPN had a large
contract with Char and that ESPN was growing rapidly.  Machado
indicated that ESPN's use of products purchased from Char could
decline, but that it would do so because of price rather than
functionality or value.  Machado allegedly assured Upland that
it would be very difficult for ESPN to replace the products Char
provided.  As set forth in the complaint, McColgan is also
alleged to have altered an email reviewed by Upland to allay
concerns regarding the relationship between Char and ESPN.

In conjunction with the Acquisition Agreement, AIG and
Upland entered a Buyer-Side Representations and Warranties
Insurance Policy ("the Policy").  After Upland purchased Char

and ESPN ended its relationship with Char, Upland submitted an insurance claim to AIG, alleging that Upland had received notice of ESPN's decision not to renew its contract with Char and that Char had knowledge of that decision before the execution of the Acquisition Agreement.  After reviewing the claim, AIG reimbursed Upland more than 5 Million dollars, the amount Upland allegedly overpaid for Char due to the fraud.  Both the Acquisition Agreement and the Policy are governed by Delaware law.

AIG, an Illinois corporation with a principal place of business in New York, asserts three causes of action against both defendants, who are residents of Massachusetts: fraudulent inducement, fraud, civil conspiracy.  A fourth cause of action, aiding and abetting fraud, is brought only against Aggarwal. This Court's jurisdiction over the matter is based on diversity pursuant to 28 U.S.C. § 1332(a) because AIG and defendants are citizens of different states and the amount in controversy exceeds 5 Million dollars.

## II.  **Motions to Dismiss**

### A. Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and

"plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678
(2009), quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw
the reasonable inference that the defendant is liable for the
misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d
1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents
incorporated by reference therein and facts susceptible to
judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st
Cir. 2011).  A court also may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. <u>Ocasio-Hernandez</u>, 640 F.3d at 12.  Rather, the
inquiry required focuses on the reasonableness of the inference
of liability that the plaintiff is asking the court to draw. <u>Id.</u>
at 13.  The assessment is holistic: "the complaint should be
read as a whole, not parsed piece by piece to determine whether
each allegation, in isolation, is plausible". <u>Hernandez-Cuevas</u>
v. <u>Taylor</u>, 723 F.3d 91, 103 (1st Cir. 2013), quoting <u>Ocasio-
Hernandez</u>, 640 F.3d at 14.

A more demanding pleading standard is, however, imposed
upon claims sounding in fraud.  Regarding those claims, a

plaintiff "must state with particularity the circumstances constituting" the fraud. Fed. R. Civ. P. 9(b).  Particularity requires alleging the "time, place, and content of the alleged misrepresentation with specificity." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (quoting Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999)).

**B. McColgan's Pending Motion**

**i. Right of subrogation**

As an initial matter, McColgan asserts that AIG has failed to state a claim upon which relief can be granted because AIG lacks a right of subrogation.  In so arguing, McColgan relies on Section 8(c) of the Policy, which states:

> The Insurer shall be entitled to subrogate against any Seller only if such payment results from or arises out of a Breach resulting from or arising out of fraud on the part of such Seller.

In the Policy, Breach is defined as a violation of Article III of the Acquisition Agreement.  McColgan asserts that the kind of Breach alleged by AIG in the complaint does not meet the requirements of Section 8(c) and, thus, AIG has no right of subrogation.

Setting aside the question of whether the effort to enforce the subrogation limitation of Section 8(c) is an affirmative defense and therefore not properly addressed on a motion to

dismiss, that Section does not shield McColgan.  Referring to
the Acquisition Agreement, the Policy defines a "Seller" as that
term is used in Section 8(c), as a stockholder of Char's Capital
Stock.  According to the complaint, McColgan does not qualify as
a "Seller" because he did not own Char's Capital Stock.  Thus,
Section 8(c) of the Policy does not apply to McColgan and cannot
support a claim against him.  Section 8(b) of the Policy,
however, which is not addressed in McColgan's motion, provides
broad subrogation rights to AIG in circumstances beyond those
discussed in Section 8(c).

### ii. Sufficiency of pleadings

McColgan contends that AIG has failed to state claims for
which relief can be granted on any of the four counts set forth
in the complaint.  The Court considers the sufficiency of the
pleadings pertaining to each of those counts in turn.

Regarding the first two counts——for fraud and fraudulent
inducement——McColgan argues that AIG: (1) impermissibly relies
on extra-contractual statements to bolster those claims in
contravention to the language in the Acquisition Agreement which
limits the written materials to be relied upon; (2) fails to
allege that Upland reasonably relied upon the Material Customer
List and (3) is unable to identify any false information

contained in the Material Customer List that Char provided to
Upland.

Each of those contentions is unavailing.  The first is
soundly refuted by the requirement of Delaware courts that only
express disclaimers of reliance upon extra-contractual
statements bar the use of such evidence to allege fraud. See FdG
Logistics LLC v. A&R Logistics Holdings, Inc., 131 A.3d 842, 860
(Del. Ch.), aff'd sub nom. A & R Logistics Holdings, Inc. v. FdG
Logistics LLC, 148 A.3d 1171 (Del. 2016).  There is no such
language in the Acquisition Agreement.  The language cited by
McColgan is instead a standard representations and warranties
clause that does not address reliance and is therefore
distinguishable from an effective express disclaimer. See Anvil
Holding Corp. v. Iron Acquisition Co., No. CIV.A. 7975-VCP, 2013
WL 2249655, at *8 (Del. Ch. May 17, 2013).  The second
contention is ineffective because AIG has alleged sufficient
facts to maintain its claims that McColgan actively sought to
mislead Upland regarding Char's relationship with ESPN and to
preclude Upland from discovering those falsehoods.

Finally, McColgan's assertion that the Material Customer
List provided to Upland did not contain falsehoods and, thus,
the claims must be dismissed is preposterous based on the many
certifications in the Acquisition Agreement to which McColgan

allegedly subscribed.  The Material Customer List is far from
the only source of alleged falsehoods.  McColgan therefore
cannot, at this stage of litigation, dispense with either of the
first two claims, which have been alleged with sufficient
particularity.

AIG has also alleged facts sufficient to maintain counts
three and four for civil conspiracy and aiding and abetting
fraud.  Having found that AIG sufficiently pled fraud and
fraudulent inducement, the Court rejects McColgan's preliminary
contention that counts three and four must be dismissed because
there is no underlying tort.  Moreover, although there are no
facts set forth that McColgan and Aggarwal communicated directly
with one another about the alleged fraud, there is sufficient
"circumstantial evidence" linking the two, i.e. the timing of
the defendants' communication with Machado.  That connection
extends beyond "speculation and innuendo" and is thus sufficient
to support the conspiracy claim. See Lipson v. Anesthesia
Servs., P.A., 790 A.2d 1261, 1289 (Del. Super. Ct. 2001).

Furthermore, although McColgan correctly notes that agents
of a corporation cannot conspire with one another or aid and
abet each in torts, see Cornell Glasgow, LLC v. La Grange
Props., LLC, 2012 WL 2106945, at *11 (Del. Super. Ct. June 6,
2012), he overlooks the fact that AIG does not allege that

Aggarwal was an agent of Char.  As set forth in the complaint, this claim falls within the well-charted precedent concerning conspiracies amongst stockholders, such as Aggarwal, and corporate officers, such as McColgan. See Agspring Holdco, LLC v. NGP X US Holdings, L.P., No. CV 2019-0567-AGB, 2020 WL 4355555, at *21 (Del. Ch. July 30, 2020), and cases cited. Moreover, defendant mistakenly relies heavily upon the recent decision of Anschutz Corp. v. Brown Robin Cap., LLC, No. CV 2019-0710-JRS, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020), re-argument granted, No. CV 2019-0710-JRS, 2020 WL 4249874 (Del. Ch. July 24, 2020), in which the claims dismissed concerned a conspiracy among corporate officers rather than, as here, a corporate officer and a defendant, such as Aggarwal, further removed from the corporate structure.

AIG has therefore proffered sufficient facts to survive McColgan's motion to dismiss.

### C. Aggarwal's Pending Motion

#### i. Right of subrogation

Similar to McColgan, Aggarwal argues that AIG has no subrogation rights to pursue claims against him.  Aggarwal relies on Section 5.11 of the Acquisition Agreement which requires that the representation and warranty insurance policy executed in conjunction with the Agreement does

> not permit subrogation or any other recovery of any
> kind of the insurer [i.e., AIG] against any
> Stockholder [e.g., Aggarwal]...under this Agreement.

As a result, Aggarwal contends that Upland waived any right to subrogate claims against Aggarwal.

The problem with that argument is two-fold.  First, while Section 5.11 sets forth requirements for the insurance policy, it is the policy itself from which AIG derives its subrogation rights.  Thus, by relying exclusively on language in the Acquisition Agreement, Aggarwal asserts, at most, a discrepancy between that Agreement and the subject Policy.  Second, both the Acquisition Agreement in Section 8.06(d) and the Policy in Section 8(c) make it clear that AIG may pursue claims of fraud against stockholders, notwithstanding limitations on subrogation rights regarding other kinds of claims.  Those provisions, as AIG convincingly submits, do not contradict Section 5.11 because AIG has not brought claims pursuant to the Acquisition Agreement (i.e., "under this Agreement") but rather claims for fraud. See Cmty. Ass'n Underwriters of Am. v. Rhodes Dev. Grp., Inc., 488 F. App'x 547, 549 (3d Cir. 2012) ("the waiver of subrogation clause only applies to [the non-party to the contract] to the extent that it asserts claims arising under that contract").

### ii. Sufficiency of pleadings

Again, as is the case with McColgan, Aggarwal challenges the sufficiency of the pleadings with which AIG has brought its four claims for relief.  At the outset, the Court notes that it has already dispensed with two of Aggarwal's arguments because they are the same as those advanced by McColgan, i.e. (1) that AIG may rely only upon written statements in proving its claims for fraud and fraudulent inducement (not so) and (2) that AIG cannot allege that McColgan and Aggarwal aided and abetted each other in torts because both are agents of the same company (again, not so).

Turning to the contentions specific to Aggarwal, he reasons that the claims for fraud and fraudulent inducement must be dismissed because AIG has failed to allege that Aggarwal himself made any false representations to AIG or that he acted with the requisite scienter.  Those arguments do not warrant dismissal, however, in light of relatively recent decisions of Delaware state courts extending liability for fraud such that

> a selling stockholder may face liability for
> representations made by the company if the stockholder
> either (i) knew that the company's representations
> were false or (ii) lied to the buyer about those
> representations.

ChyronHego Corp. v. Wight, No. CV 2017-0548-SG, 2018 WL 3642132, at *10 (Del. Ch. July 31, 2018), and cases cited.  Thus, in

Prairie Cap. III, L.P. v. Double E Holding Corp., 132 A.3d 35,
60 (Del. Ch. 2015), for example, stockholders were held liable
for fraud because they were alleged to have known that
representations made by the company in which they held stock
were false.  Based on that development, AIG has pled, with
particularity, "facts and circumstances indicating fraudulent
intent," In re Cabletron Sys., Inc., 311 F.3d 11, 29 (1st. Cir.
2002), sufficient to support the allegations that Aggarwal knew
Machado misrepresented the relationship between ESPN and Char to
Upland.  Accordingly, those claims will not be dismissed.

Aggarwal also claims that AIG failed to plead the essential
elements of the conspiracy and aiding and abetting.  At the
motion to dismiss stage, this Court accepts all plausibly
alleged facts as true.  AIG has plausibly alleged that Aggarwal
knowingly worked in concert with McColgan in advance of the call
between Machado and Upland to misrepresent the relationship
between Char and ESPN with the goal of inflating the price at
which Upland would agree to purchase Char.  The allegations
supporting that narrative include Aggarwal's detailed knowledge
of the business relationship between Char and ESPN, as well as
the timing and circumstances of the communications among
Aggarwal, McColgan and Machado.  Accordingly, AIG has
sufficiently pled that Aggarwal conspired with, and aided and

abetted, McColgan to commit the fraud alleged. See AeroGlobal
Cap. Mgmt., LLC v. Cirrus Indus., Inc., 871 A.2d 428, 437 n.8
(Del. 2005) ("The elements for civil conspiracy under Delaware
law are: (1) a confederation or combination of two or more
persons; (2) an unlawful act done in furtherance of the
conspiracy; and (3) actual damage."); Wavedivision Holdings, LLC
v. Highland Cap. Mgmt. L.P., No. CIV.A. 08C-11-132JOH, 2011 WL
5314507, at *17 (Del. Super. Ct. Nov. 2, 2011), aff'd, 49 A.3d
1168 (Del. 2012) ("Liability for aiding and abetting requires
proof of three elements: (1) underlying tortious conduct; (2)
knowledge; and (3) substantial assistance.").

**ORDER**

For the foregoing reasons, defendants' motions to dismiss
(Docket Nos. 38 and 41) are **DENIED**.


**So ordered.**

                                   /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge


Dated September 7, 2022