**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| **AIG Specialty Insurance Company,** | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No.** 21-11112-NMG |
| **Jude McColgan, et al.,** | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims that Jude McColgan
("McColgan"), Rajeev Aggarwal ("Aggarwal") and Andrew Machado
("Machado") (collectively, "defendants") provided false and
misleading information to fraudulently induce Upland Software,
Inc. ("Upland") to purchase Char Software, Inc. d/b/a Localytics
("Localytics"). AIG Specialty Insurance Company ("AIG" or
"plaintiff"), as subrogee and assignee of Upland, now seeks to
recover the amount Upland allegedly overpaid due to the fraud.
Pending before the Court is defendant Machado's motion to
dismiss.

I.   **Background**

A.   **Factual Background**

The facts of this case have been described at length in
prior memoranda entered by this Court.  Therefore, the Court
will summarize here only the salient facts relevant to defendant
Machado's involvement.

Defendant Machado was a Senior Director of Product
Management at ESPN at the time that Upland was considering
purchasing Localytics.  As alleged in the amended complaint,
Machado was one of Localytics' main contacts at ESPN.  Managers
of Localytics unsuccessfully discussed with Machado potential
expansion of business with ESPN in January, 2020, before Machado
informed Localytics via email that ESPN had decided not to renew
its contract due to expire in May, 2020.

Machado did agree to participate in a due diligence call
with Upland in late January, 2020, after informing Localytics
of ESPN's non-renewal.  Machado stated on the call that

> ESPN had a large contract with Localytics and they
> were growing rapidly.  He indicated that ESPN's use of
> Localytics' product could decline, but that it would
> do so because of price, not functionality or value.
> Machado also reassured Upland that it would be very
> difficult to remove a solution such as Localytics'
> product.

AIG alleges that Machado's report was misleading and false because ESPN had already determined it would not be renewing its contract with Localytics.  AIG contends that Upland paid $5 million more for Localytics than it would have paid had it known the truth about the non-renewal.

### B.    Procedural Background

AIG filed suit on behalf of Upland in this Court in July, 2021 against defendants McColgan and Aggarwal.  Both defendants promptly moved to dismiss in separate motions but those motions were denied.  Defendant Aggarwal then moved for clarification as to the Court's Memorandum & Order which was denied in February, 2023.

In April, 2023, AIG filed its second amended complaint naming Machado as an additional defendant.  Machado moved to dismiss and that motion is pending before the Court.

## II.  <u>Motion to Dismiss</u>

### A.    Legal Standard

Defendant Machado moves to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

- 3 -

AIG bears the burden of showing that the Court has
authority to exercise jurisdiction over defendant Machado.
Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).
Where, as here, the Court decides a motion to dismiss for lack
of personal jurisdiction without first holding an evidentiary
hearing, the Court takes plaintiff's

> properly documented evidentiary proffers as true and
> construe[s] them in the light most favorable to
> [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir.
2016).  A plaintiff cannot, however, rely on

> unsupported allegations [and] must put forward
> evidence of specific facts to demonstrate that
> jurisdiction exists.

Id. (quotations and citations omitted).

In a diversity suit such as this one, this Court acts as
"the functional equivalent of a state court sitting in the forum
state." Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d
1, 8 (1st Cir. 2009).  As such, plaintiff must demonstrate that
the exercise of personal jurisdiction is permitted by the
Massachusetts long-arm statute, M.G.L. c. 223A § 3, and coheres
with the Due Process Clause of the Fourteenth Amendment by
showing that defendant has "minimum contacts" with the
Commonwealth. Daynard v. Ness, Motley, Loadholt, Richardson &
Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

- 4 -

This Court's jurisdiction may be either "specific" or "general." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001).  Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id.  Those contacts must demonstrate that defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998).  General jurisdiction, on the other hand, exists when the defendant has "engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F.3d at 618.

B.   **Massachusetts Long-Arm Statute**

The requirements of the Massachusetts long-arm statute are substantially similar to (although potentially more restrictive than) those imposed by the federal Due Process Clause. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016); Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  This Court independently analyzes personal jurisdiction pursuant to that statute due to the distinction between the two regimes.

AIG contends that this Court can exercise personal jurisdiction over defendant Machado based on subsections a, c

and d of the Massachusetts long-arm statute, M.G.L. c. 223A § 3

which provides, in relevant part that

> A court may exercise personal jurisdiction over a
> person, who acts directly or by an agent, as to a
> cause of action in law or equity arising from the
> person's
>
> (a) transacting any business in this commonwealth;
> . . .
>
> (c) causing tortious injury by an act or omission in
> this commonwealth; [or]
>
> (d) causing tortious injury in this commonwealth by an
> act or omission outside this commonwealth if he
> regularly does or solicits business, or engages in any
> other persistent course of conduct, or derives
> substantial revenue from goods used or consumed or
> services rendered, in this commonwealth . . . .

M.G.L. ch. 223A, § 3 (a, c, d).

Subsection 3(a) provides for the exercise of jurisdiction

over a defendant when the cause of action at issue arises from

that defendant's transaction of business in the Commonwealth.

M.G.L. c. 223A, § 3(a); see SCVNGR, Inc. v. Punchh, Inc., 85

N.E.3d 50, 55 (Mass. 2017).  Accordingly, to establish

jurisdiction under § 3(a), plaintiff must allege facts which

satisfy two requirements: 1) that defendant transacted business

in Massachusetts and 2) that the claims at issue arose from that

transaction of business. Exxon Mobil Corp. v. Attorney General,

94 N.E.3d 786, 793 (Mass. 2018).

The first condition is not met here.  Although the transacting-business requirement is construed broadly, <u>Tatro</u> v. <u>Manor Care</u>, 635 N.E.2d 549, 551 (Mass. 1994), it nevertheless imposes real limitations, <u>see</u> <u>Lacy</u> v. <u>Jublia Pte LTD.</u>, No. 20-P-1319, 2022 Mass. App. Unpub. LEXIS 230, at *7 (Mass. App. Ct. Apr. 1, 2022) (collecting cases), which Machado's limited in-forum activity fails to meet.  AIG argues that Machado engaged in business in Massachusetts by serving as the main ESPN contact person for Massachusetts-based Localytics and communicating with Localytics via phone and email.  Such limited connections cannot afford jurisdiction.  Machado undertook all the purported conduct while in Connecticut.

Under such circumstances, the Court cannot conclude that Machado participated in the "economic life" of the Commonwealth. <u>See</u> <u>Access Now, Inc.</u> v. <u>Otter Prods., LLC</u>, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (finding transacting-business requirement met where, <u>inter</u> <u>alia</u>, defendant had $20 million worth of in-forum sales, had sales representative in forum and was registered to do business there).

AIG's argument for personal jurisdiction under Subsections 3(c) and 3(d) fare no better.  Subsection 3(c) provides for the exercise of jurisdiction over a defendant who causes "tortious injury" by an act or omission in Massachusetts.  As discussed

above, Machado was physically present in Connecticut during the entire relevant period.

The threshold requirement of Subsection 3(d) is that the defendant's out-of-state act caused the plaintiff's in-state harm. Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65, 71 (D. Mass. 2001). AIG sufficiently alleges that Machado's actions in Connecticut harmed plaintiff in Massachusetts. But plaintiff must also satisfy one of the three disjunctive prongs of the second requirement of § 3(d): 1) engaging or soliciting business in Massachusetts, 2) engaging in any other persistent course of conduct in Massachusetts or 3) deriving substantial revenue from goods used or consumed in Massachusetts. M.G.L. c. 223A, § 3(d). Again, the amended complaint fails to allege that Machado engaged in regular business or any conduct in Massachusetts at all, nor that he derived substantial revenue from goods used or consumed in Massachusetts.

In sum, the Massachusetts long-arm statute does not permit the exercise of personal jurisdiction over Machado. Accordingly, the Court need not opine on whether an assertion of jurisdiction would be constitutionally sound. SCVNGR, Inc., 85 N.E.3d at 56; see Doe v. JetBlue Airways Corp., No. 20-11623-ADB, 2021 U.S. Dist. LEXIS 145125, at *21-22 (D. Mass. Aug. 3,

2021) (declining to reach constitutional question where

jurisdiction could not be exercised under long-arm statute).

    **C.    Conspiracy Theory**

    AIG also attempts to establish personal jurisdiction over

Machado pursuant to a conspiracy theory, citing <u>Greater</u>

<u>Newburyport Clamshell All.</u> v. <u>Pub. Serv. Co. of New Hampshire</u>,

No. CIV. A. 83-006-MA, 1983 WL 489274, at *2 (D. Mass. May 25,

1983).  Under that theory,

> certain additional connections between the conspiracy
> and the forum state will support the exercise of
> jurisdiction.  These additional connections exist
> where 1) substantial acts in furtherance of the
> conspiracy are performed in the forum state and 2) the
> co-conspirator knew or should know that the acts would
> be performed there.

<u>Id.</u>  Setting aside whether such a theory is even recognized by

the First Circuit, <u>see</u> <u>Glaros</u> v. <u>Perse</u>, 628 F.2d 679, 682 n.4

(1st Cir. 1980) ("[W]e do not mean to . . . decide that we would

recognize a conspiracy theory of personal jurisdiction at

all."), the amended complaint fails to plead facts indicating

that Machado knew that McColgan and Aggarwal were conspiring to

engage in any tortious conduct.  Therefore, such a conspiracy

theory cannot provide a basis upon which this Court may exercise

personal jurisdiction over Machado.

**D.    Alternate Forms of Relief**

Finally, in its opposition brief, AIG requests leave to conduct limited jurisdictional-related discovery and, if the Court determines it does not have personal jurisdiction over Machado, requests the Court sever and transfer the claims against Machado to the Districts of Connecticut or Nevada. Those requests will be denied because AIG fails to demonstrate that either request is justified.

**ORDER**

For the foregoing reasons, the defendant's motion to dismiss (Docket No. 100) is **ALLOWED**.  Defendant Machado is dismissed from this action.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: August 14, 2023